### SMITH v. BOOTH et al.

(District Court, S. D. New York. June 18, 1901.)

1. SHIPPING—LOSS OF GOODS IN TRANSSHIPMENT—NEGLIGENT LOADING OF LIGHTER.

A shipment of rice was made from Liverpool under bills of lading requiring it to be transported to New York, and there delivered to W. & Co., and by them to be transshipped by a designated line of steamers, and delivered to the consignee in Havana. W. & Co. received the rice, and contracted with a lighterage company to transfer the same to the Havana steamer. That company chartered a lighter, together with a lighterman, who was furnished by the owner, and who engaged the

stevedores and superintended the work. Through his negligence the lighter was so loaded as to be top-heavy, and when discharging capsized. and the greater part of the rice was lost. *Held,* that W. & Co., the lighterage company, and the owner of the lighter were each liable for the loss,—W. & Co. on their contract to safely transship, the lighterage company on its undertaking as carrier to lighter the goods, and make proper delivery, and the owner of the lighter for the negligence of its servant, and its obligation to indemnify the lighterage company as carrier; on which ground it was cited into the cause as defendant by W. & Co., under the fifty-ninth rule.

**2.** SAME—LIMITATION OF LIABILITY—CHARTERER.

A lighterage company which contracts to transfer cargo from one ship to another, and for that purpose charters a lighter, the lighterman, who employs the stevedores, and superintends the work, being furnished by the owner, is not entitled to a limitation of liability, under Rev. St. § 4286, for a loss of cargo by the capsizing of the lighter through negligent loading.

**3.** SAME—BILLS OF LADING.

Bills of lading for a shipment of rice from Liverpool required its delivery to W. & Co. in New York, by whom it was to be transshipped and forwarded by a steamer of a company operating a line to Havana, "on terms, tenor, and conditions of bill of lading of the aforesaid company." The goods were lost by the capsizing of a lighter employed by W. & Co. while being transferred to the Havana steamer. *Held,* that the bill of lading which would have been issued by such steamer did not become operative, since the goods were not delivered on board, and that W. & Co. could not avail themselves of its provisions to relieve themselves from liability for the loss.

## In Admiralty.

This action was instituted originally by J. Raymond Smith against Henry P. Booth alone, as sole member of the firm of James E. Ward & Co., to recover the value of 1902 bags of rice, which were lost overboard from the lighter Mary Elizabeth on September 1, 1898, by her capsizing while lying alongside the steamer Avala, engaged in transshipping rice from the lighter to the steamer.

The rice was shipped at Liverpool, England, by Messrs. Twigge & Crosfield, on the steamer Teutonic, under 8 bills of lading, each covering 250 sacks, for transportation to New York, and there "to be delivered in like good order and well-conditioned (subject to various exceptions here immaterial) unto James E. Ward & Co., and by them to be transshipped and forwarded thence. by one of the steamers of James E. Ward &, Co., at shipowners' expense, conveying the goods under the terms, tenor, and conditions of the bill of lading of the aforesaid company, at risk and expense of shippers and consignees, and deliver same at port of Havana, unto order, or assigns."

The bills of lading were indorsed in blank and sent to Brown, Martinez & Co., of Havana, who thereby became entitled to delivery of the rice at Havana. The rice was insured by the Maritime Insurance Company, Limited, of Liverpool, in the amount of £2,250 British sterling under a valuation of £2,500. Twigge & Crosfield, Brown, Martinez & Co., and the Maritime Insurance Company, Limited, made assignments of their interests to the libelant.

On arrival of the Teutonic at New York, Ward & Co. received the rice, and made the necessary entry at the custom house for the purpose of transshipment. James E. Ward & Co. at this time had no steamers of their own. They had formerly run a line of steamers to Cuban and Mexican ports which was then and still is known as the "Ward Line"; but some years before this shipment they transferred all their steamers to the New York & Cuba Mail Steamship Company, a corporation by which the business of the line was thereafter, and is still conducted. James E. Ward & Co. were the agents of that corporation, and the defendant Henry P. Booth the sole

member of the firm, was and is its president. His answer averred that he had employed the Export Lighterage Company for the transshipment of goods from the Teutonic to the Avala, one of the steamship company's chartered vessels, and that the Export Lighterage Company had chartered the lighter, Mary Elizabeth, from the Merritt & Chapman Derrick & Wrecking Company, by whose fault, if any fault there was, the lighter capsized; and on his petition the Merritt & Chapman Derrick & Wrecking Company was cited into the cause as defendant under the fifty-ninth rule. The latter company answered that it had no connection with the Mary Elizabeth except as agent of the Commercial Lighterage Company, another corporation, which owned the lighter; and on Booth's second petition the Commercial Company was cited under the fifty-ninth rule as an additional defendant. By various amendments to the libel, the Export Lighterage Company was also made defendant, and it was finally alleged that the rice was in the joint possession of Booth and that company, and that the loss occurred through their joint fault and negligence, and the joint fault and negligence of those to whom the work of transshipment had been intrusted.

The Export Lighterage Company by its answer alleged that the loss did not happen through any defect of the lighter, its loading, or the manner of discharge; that it had no contract with the libelant's assignor, and that it was not answerable for the loss. The Commercial Lighterage Company denied any negligence on its part, and by amendment pleaded that the value of the vessel did not exceed the sum of $300, to which sum it claimed to limit its liability, if any liability existed.

Butler, Notman, Joline & Mynderse, for libelant.
Wing, Putnam & Burlingham, for H. P. Booth.
Benedict & Benedict, for Export Lighterage Co.
Avery F. Cushman, for Merritt & Chapman Derrick & Wrecking Co. and Commercial Lighterage Co.

BROWN, District Judge (after stating the facts as above). Upon careful consideration of the evidence and circumstances, I am satisfied that the lighter capsized in consequence of improper loading, that is, from putting the entire cargo of over 200 tons upon deck, with none in the hold, so that the lighter had not ordinary or reasonable steadiness. Only about 10 tons in all had been removed when the lighter capsized. It was unloaded over the port side. A short time before, a list to starboard was observed, and as it increased the stevedore's men set to work rolling the bags of rice from the starboard side to the port side, but before a sufficient change could be made the lighter capsized.

The loading of the lighter was under the immediate supervision of the lighterman Harrigden, who was in the employ of the Commercial Lighterage Company, the owner of the scow and was paid by that company; and the letting of the scow to the Export Lighterage Company included the services of Harrigden, who was in charge of it. On arrival of the scow he was directed by Mr. Bird, who was the general agent and manager of James E. Ward & Co., and was also the president of the Export Lighterage Company to proceed to pier 50 North river, where the Teutonic discharged, and take the rice and bring it (about two miles) to the New York & Cuba Mail Steamship Company's pier near the foot of Wall street. Under this order the lighterman proceeded to the Teutonic's pier, engaging stevedores, who were paid by the lighterage company, and superintended and directed the loading of the rice upon the lighter in the

manner above stated. On the 26th of May the lighter was towed around the Battery to the docks of the Ward Line, remained there until the 1st of September, when the Avala, one of the steamship company's chartered steamers, being ready to receive the cargo for transportation to Havana, the lighter was sent alongside that steamer for the purpose of delivering the rice on board.

It is suggested that as the lighter leaked somewhat, so as to require some pumping every few hours, the leak might have increased from some pounding or accident in changes of position during the several days that the lighter was waiting in the slip, so that when the list to starboard began it was rapidly increased by the flow of water to the starboard side. The evidence shows, however, that the lighter was pumped out until the pump sucked at 4 a. m., less than three hours before the accident. The suggestion of further injury to the boat and consequent heavier leaks have no foundation in the evidence; and as a bare possibility, it cannot be regarded, considering that a sufficient cause of the accident appears in evidence, namely, in the loading of the lighter to her full capacity, or as would appear from the evidence of Mr. Briggs, a former owner, somewhat above her proper capacity, and placing the entire load on deck without anything below to steady her. The lighter, moreover, was completely housed over, excepting a few feet at the stern and the bow. All the rice was inside the house, which was filled nearly to the top, so that when the lighter commenced to list to starboard, the side of the house prevented any of the bags from rolling off, which but for the house might have relieved the lighter and have prevented capsizing.

Some claim is made that the stevedores of the steamship were to blame for not unloading the rice more carefully so as to preserve the lighter's equilibrium. The lighterman told the stevedores that the lighter was tender, and asked that the unloading be in the inverse order of the loading, beginning forward. It not being convenient for the Avala to begin discharging through the forward gate or doorway of the house on the lighter, the discharge was commenced from the aft gateway, and in this Mr. Harrigden, whose business it was to keep tally of the bags as they were delivered on board of the steamer, seems to have concurred. In other respects the stevedores testified that they did unload in the manner requested by Mr. Harrigden and in a manner different from usual; and without going into further details, I find that there was no such substantial disregard of Harrigden's request, or of any notice given by him to the stevedores as to charge them with blame or negligence.

From the above finding as to the cause of the loss, the liability of all the defendants follows as a legal consequence; that of the defendant Booth, as the sole representative of James E. Ward & Co., upon his contract to transship the goods and his failure to do so; that of the Export Lighterage Company, which having as carrier undertaken to lighter the goods and make proper delivery to the Avala was bound as carrier (Carv. Car. by Sea, §§ 5, 462) to do so, and was answerable to the owner for any negligence causing damage; and that of the Commercial Lighterage Company for the negligence of Harrigden, its employé, in the management of the

loading. The Export Lighterage Company as carrier is not excused by the negligence of the lighterman on the chartered scow, which was merely the agency it employed to effect the carriage. Gannon v. Ice Co., 33 C. C. A. 662, 91 Fed. 539. The Commercial Lighterage Company is liable, not only for the negligence of its employé in handling the goods, but upon its obligation to indemnify the Export Lighterage Company and Booth upon their liability as carrier, on which ground they were cited as defendants into the cause under the fifty-ninth rule. That company seems, however, to be within the provision of section 4283 of the Revised Statutes, which limits the liability of an owner to the value of his interest in the vessel and her freight then pending.

The liability of the Export Lighterage Company, as charterer of the lighter, does not seem to be within the provision of section 4286; inasmuch as the charterer did not in this case "man, victual and navigate the lighter at its own expense," and the defendant Booth is clearly not within this provision. If it be unequal, and in that sense inequitable, that the owner of the vessel should be relieved by the statute from a large part of the damage resulting from the negligence of its own employé, while the charterer who suffers from the same negligence, is not relieved, it can only be said that this relief is a statutory and arbitrary one, and can extend no further than the statute prescribes, and that the charterer in this case is not within it; while it would be equally inequitable, as between the charterer and the defendant Booth, that the charterer should be relieved to the prejudice of Booth, who is in no personal fault and is clearly entitled to indemnity from the charterer who undertook to do the lighterage and transshipment.

It is contended in behalf of the defendant Booth that he is entitled to the benefit of various stipulations in the Ward Line's bill of lading, which would have been issued had the rice been shipped upon the Avala in pursuance of the agreement in the original bill of lading, whereby it was provided that the goods were to be transshipped by James E. Ward & Co. and forwarded by them from New York "by one of the steamers of James E. Ward & Co. at shipowner's expense, conveying the goods on terms, tenor and conditions of bill of lading of the aforesaid company at risk of shippers and consignees, and deliver the same at the port of Havana." Although James E. Ward & Company had no steamers, it may be conceded that the carriage of the goods from New York to Havana would be subject to the usual terms of the bill of lading in use by the Ward Line; but no such bill of lading could come into operation until the rice was either put on board the Ward Line steamer, or else properly delivered into the possession and control of the steamship company for that purpose. Neither was done. At the time when the lighter capsized no such transshipment or delivery of this rice had been made. It was still in the possession of Booth or of the Export Lighterage Company as lighterman. The stevedores of the steamship company were engaged in transshipping the rice from alongside. But in consequence of the improper loading of the lighter, there was no proper delivery, and the stevedores were not able to secure the goods or to take possession or control of them

before the lighter capsized. I find, therefore, that the expected bill of lading and its various provisions never became applicable to these goods; that the contract did not provide that that bill of lading should cover any lighterage of the goods from the Teutonic to the Havana steamer, nor any contract of James E. Ward & Co. for such lighterage, or their possession of the goods prior to a proper and complete delivery of them to the steamship company, or their delivery of them on board the steamer.

Decree for libelant against the defendants with costs, except as against the Merritt & Chapman Derrick & Wrecking Company, as to which this libel is dismissed with $20 costs.