## SMITH v. BOOTH et al.

(Circuit Court of Appeals, Second Circuit. April 9, 1903.)

No. 107.

1. SHIPPING—BILLS OF LADING.

Through bills of lading issued for a cargo of rice from Liverpool by W. & Co., as owner of a steamship line between New York and Havana, provided that the rice should be delivered at New York "unto W. & Co., and by them to be transshipped and forwarded thence by one of the steamers of W. & Co. at shipowner's expense, conveying the goods on the terms, tenor, and conditions of the bills of lading of the aforesaid company." *Held,* that the through bills of lading covered the obligations of W. & Co. in three different capacities: (1) As initial carrier upon the conditions expressed in the original bills of lading; (2) as intermediate carrier in making transshipment upon conditions not expressed, but implied from the nature of the undertaking; and (3) as ultimate carrier upon conditions to be expressed in further bills of lading; and that the latter bills of lading did not become effective until after the transshipment and delivery of the goods on board.

2. NEGLIGENCE—PRINCIPAL AND AGENT—JOINT LIABILITY FOR NEGLIGENCE OF AGENT.

Where an ocean carrier undertook to transship goods, and employed a lighterage company for the service, they are jointly liable for a loss of the goods through the negligence of the lighterage company.

3. SAME—RELATION OF MASTER AND SERVANT.

A lighterage company which chartered a lighter to transfer goods of a third party under direction of an employé of the owner of the lighter made such employé its own servant for the time, and is liable for a loss of goods through his own negligence in loading.

Appeals from the District Court of the United States for the Southern District of New York.

For opinion below, see 110 Fed. 680.

Robert D. Benedict, for appellant Lighterage Co.

Harrington Putnam, for appellant Booth.

A. F. Cushman, for respondents appellees.

Wilhelmus Mynderse, for libelant appellee.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

WALLACE, Circuit Judge. These are separate appeals by Booth and by the Export Lighterage Company from a decree adjudging a recovery against both to the libelant for the loss of a cargo of rice by the sinking of a lighter upon which it was being transferred to the steamer Avala. The libelant sued as assignee of the owner of the rice and of the marine underwriters who had insured it. Booth was sued as the sole surviving member of the firm of James E. Ward & Co., of New York.

The rice had arrived at the port of New York by the steamship Teutonic, whence it had been shipped at Liverpool under through

¶ 3. See Master and Servant, vol. 34, Cent. Dig. § 1214.

bills of lading purporting to be issued by James E. Ward & Co., as owners of the New York, Cuba & Mexican Mail Steamship Line. By the terms of the bills of lading the rice was to be delivered by the Teutonic at the port of New York "unto James E. Ward & Co., and by them to be transshipped and forwarded thence by one of the steamers of James E. Ward & Co., at shipowner's expense, conveying the goods on the terms, tenor, and conditions of the bills of lading of the aforesaid company, at risk of shippers and assignees, and deliver same at the port of Havana unto order or assignees."   The firm of James E. Ward & Co. was the agent at New York of the New York & Cuba Mail Steamship Company, and it was the vessels of this company which were referred to in the bills of lading as "one of the steamers of James E. Ward & Co."   Upon the arrival of the rice by the Teutonic, James E. Ward & Co. employed the Export Lighterage Company to transfer it from the Teutonic to the Avala, a steamship belonging to the New York & Cuba Mail Steamship Company and about to sail for Havana, and the Export Lighterage Company chartered the lighter for the service from the Commercial Lighterage Company.   The lighter was loaded under the supervision of an employé of the Commercial Lighterage Company.   The rice had been carried upon it from the Teutonic alongside the Avala.   While the rice was being unloaded into the Avala the lighter capsized, and 1,902 bags were lost overboard.   The libel alleges that the lighter was in the joint possession of Booth and the Export Lighterage Company at the time, and that the lighter capsized and the rice was lost through their joint fault and negligence.

The court below found that the lighter capsized in consequence of improper loading, "from putting the entire cargo of over 200 tons upon the deck, with none in the hold, so that the lighter had not ordinary or reasonable steadiness," and in consequence, when a few tons had been unloaded from the port side, the lighter listed to starboard and overturned before enough bags could be removed from that side to relieve the list.   In this conclusion, after a careful consideration of the evidence, we agree, being of the opinion that none of the other theories of the casualty are fairly consistent with the facts and probabilities.   No other question of fact arises upon this appeal.

It is contended for both the appellants that by the language of the through bills of lading the transshipment of the rice at New York, as well as its transportation thence to Havana, was "on the terms, tenor, and conditions of the bill of lading" referred to in the through bills; that the bill of lading referred to is that in use by the New York & Cuba Mail Steamship Company; and consequently that the exemptions from liability inserted in the bills of lading of the New York & Cuba Mail Steamship Company exonerate the appellants from liability. If this contention is justified, and the exemptions protect the firm of James E. Ward & Co. against liability to the libelant, the Export Lighterage Company, as the agent or servant of that firm in effecting the transshipment, is doubtless likewise protected.   We are of opinion, however, that the contention is not warranted by the language of the contract.   The through bills of lading evidence a contract which is ↖

framed to cover the obligations of Ward & Co. to the shippers in three different capacities: First, as initial carrier, upon the conditions expressed in the original bills of lading; second, as intermediate carrier, upon conditions not expressed, but implied from the nature of the undertaking; and, third, as ultimate carrier, upon the conditions to be expressed in a further bill of lading. The contract treats these different obligations as those of distinct parties who have entered into engagements with the shipper. It provides in terms that in case of "damage or detention to the goods on this through bill of lading only the party in whose possession the goods were at the time" shall be liable. If the goods are damaged or detained while in the possession of the initial carrier, recourse must be had to the conditions of the original bills of lading to ascertain the liability of Ward & Co.; if they are damaged or detained while in the possession of the intermediate carriers, recourse must be had to the implied undertaking; and, if they are damaged or detained while in the possession of the final carrier, recourse must be had to the bill of lading upon which the final transportation takes place. The provision referred to is meaningless unless it is intended to differentiate the obligations of Ward & Co. as initial carriers, as intermediate carriers, and as final carriers of the goods. The language of the bills of lading referring to another bill of lading more appropriately applies to the undertaking of the ultimate carrier, by which they are to be "forwarded thence," and to a bill of lading in use, or to be issued, for "conveying the goods" after they have been transshipped at New York. The terms of an instrument prepared, as this one was, by the carrier, and containing many provisions limiting responsibility, are to be strictly construed in favor of the shipper, and if capable of different constructions should receive that one which is least restrictive of the ordinary obligations of the carrier. We agree with the court below that the further bill of lading was not to take effect until the rice was delivered to the steamer by which it was to be conveyed from New York to Havana. It follows that the conditions set up are not available as a defense to the action.

We do not doubt that both appellants were jointly responsible for the negligence. Whether Ward & Co. are to be considered as intermediate carriers at New York for the purpose of receiving the rice and then delivering it to another vessel, or whether they are to be considered merely as bailees who did not assume the strict obligations of a common carrier, they were bound to exercise ordinary care in performing the service. By intrusting the service to another they made the latter their agent, and became responsible for any negligence of the agent in its performance. In cases of misfeasance, or of negligence partaking of that character, the agent as well as the principal is liable to the party injured, and a joint action against both is maintainable. Wright v. Wilcox, 19 Wend. 343, 32 Am. Dec. 507; Phelps v. Wait, 30 N. Y. 78; Hewett v. Swift, 85 Mass. 420. The circumstance that the overloading of the lighter was the act of the employé of the Commercial Lighterage Company does not relieve the Export Lighterage Company, whose servant he was for the time be-

ing. Smith v. Bouker, 1 C. C. A. 481, 49 Fed. 954; Gannon v. Consolidated Ice Co., 33 C. C. A. 662, 91 Fed. 539.

We have not overlooked the objection that the case made by the proofs does not conform to the averments of the libel. We think that the substantial averments are proved, and that the objection is without merit.

We find no error in the decree of the court below, and accordingly it is affirmed, with interest and costs to the appellee.