## THE JAMES HORAN.

### Petition of WARNER–QUINLAN CO.

District Court, D. New Jersey.

Feb. 23, 1935.

Wall, Haight, Carey & Hartpence, of Jersey City, N. J. (Thomas G. Haight, of Jersey City, N. J., and Chauncey I. Clark and William J. Dean, both of New York City, of counsel), for petitioner.

Arthur T. Vanderbilt, of Newark, N. J., for claimants Swan-Finch Oil Corporation and Standard Oil Co. of New Jersey.

FORMAN, District Judge.

This is a petition under section 4283 of the Revised Statutes (46 USCA § 183) to limit the liability of the petitioner, the Warner-Quinlan Company, for the damages caused by a fire which occurred on its chartered barge, the James Horan, on September 14, 1929.

The James Horan, a wooden barge, with a cargo of crude oil lay alongside the dock of the petitioner on the morning of September 14, 1929. Lightning struck her and fire broke out, spreading and increasing rapidly. The petitioner's employees cut her adrift. Efforts were made by several agencies to bring the fire under control and to beach the barge. These were unsuccessful. The burning barge came in contact with a dock of the Standard Oil Company of New Jersey. The collision caused the flaming oil to fire the dock. It spread to other property of the Standard Oil Company and to the property of the Swan-Finch Oil Company, causing considerable losses.

The Standard Oil Company and the Swan-Finch Oil Corporation brought an action against the petitioner in the Supreme Court of New Jersey to recover for the damages to their properties caused by the fire. The case was tried to the court without a jury. The court concluded that the Warner-Quinlan Company violated a duty owed to the Standard Oil Company and the Swan-Finch Oil Corporation in casting loose the burning barge in disregard of danger to the property of others and "the act of using a wooden barge for the transportation of inflammable fuel oil in such a large quantity, and mooring the barge to the dock in close proximity to other shipping, without greater fire protection, and then casting the blazing barge adrift, was not the exercise of the care which ordinary prudence required under the circumstances." The court held furthermore that the damage to the plaintiffs' property was "the proximate and efficient result of the casting adrift of the barge." Swan-Finch Oil Corp. v. Warner-Quinlan Company, 167 A. 211, 212, 11 N. J. Misc. 469.

A jury assessed damages against the petitioner in the sum of $400,076.26. The Court of Errors and Appeals of New Jersey

affirmed the decision of the trial court, in an opinion by Mr. Justice Bodine entitled in the same cause and reported in 112 N. J. Law, 519, 171 A. 800.

The petition of the Warner-Quinlan Company in this proceeding avers that the petitioner "was a charterer of the barge Horan within the meaning of section 4286 of the Revised Statutes of the United States" [46 USCA § 186], and sets forth the facts showing that the fire on the barge resulted in the destruction of the property of the Standard Oil Company and the Swan-Finch Oil Corporation. The petition prays that the court limit the liability of the petitioner for the losses by the fire to the value of the barge and her cargo. The monition was issued citing the interested parties to make presentment of claims, and a restraining order was entered.

The Standard Oil Company and the Swan-Finch Oil Corporation filed claims and exceptions to the petition.

The claimants contend that the petition should be dismissed on several grounds. Their chief arguments are that the court has no jurisdiction to limit the liability of the petitioner; that the petitioner is not a charterer within the meaning of section 4286 of the Revised Statutes (46 USCA § 186); that the fact that the petitioner used a wooden barge to transport oil under the circumstances excludes it by the provisions of section 4283 of the Revised Statutes (46 USCA § 183) and prevents the petitioner from claiming the benefit of the statute. There are a number of other arguments, the consideration of which are not necessary for a determination of this proceeding.

The Supreme Court found that the use of the wooden barge to transport or store the fuel oil under the surrounding circumstances and cutting adrift the blazing barge were negligent acts, and that the damages to the property of the claimants were the "proximate and efficient" result of the casting adrift of the barge.

"I am also of the opinion that there was established, as a matter of fact, by the clear weight of the testimony, negligence on the part of the defendant. The act of using a wooden barge for the transportation of inflammable fuel oil in such a large quantity, and mooring the barge to the dock in close proximity to other shipping, without greater fire protection, and then casting the blazing barge adrift, was not the exercise of the care which ordinary prudence required under the circumstances.

"There remains the question of proximate cause. I cannot agree with the defendant that the damage to the plaintiffs' property was not the proximate and efficient result of the casting adrift of the barge. On the contrary, there was no intervening, culpable, and efficient agency which broke the chain of causation, no negligence by any other actor in the premises, no elements except natural and casual ones such as wind and tide which intervened between the starting of the wrongful act and its conclusion.

"I find no facts which support the charge of the defendant that there were acts of negligence on the part of the plaintiffs which contributed to the occurrence.

"The verdict will be for the plaintiffs in such amount as may be assessed by a jury to be impaneled for that purpose." Swan-Finch Oil Corp. v. Warner-Quinlan Co., 167 A. 211, 212, 11 N. J. Misc. 469, at page 472.

The Court of Errors and Appeals in affirming the above decision said:

"We do not think the trial court erred in finding the defendant guilty of negligence in using a wooden barge to transport volatile oil in a locality congested by shipping and bordered by buildings used for the refinement of oil and the manufacture of chemicals. The evidence well supports the findings of the trial court.

"It seems to us that the decision of the trial court may well be sustained on the simple ground—and we so sustain it—that there is evidence that the cutting adrift of the burning barge was a negligent act for which recovery was proper. The evidence shows that instead of fighting the fire with the available apparatus with an offshore wind blowing, the barge was cut loose to drift where wind and tide might carry it. Such an act is not one we can say the court below should have found was the act of a reasonable and prudent person, bearing in mind all the surrounding circumstances. The action of the wind and tide in carrying the burning barge would not break the causal connection." 112 N. J. Law, 519, at page 521 et seq., 171 A. 800, 801.

 Regardless of whether or not this court would reach a conclusion similar to that of the New Jersey courts as to the liability of the petitioner for the losses resulting from the fire, the facts are res adjudicata and the determination here must be based on the decision of the state court. This proceeding is merely a determination of whether or not the petitioner is entitled to

limit its liability for causes of action which have been adjudicated. The proceeding under the limitation of the vessel owners' liability act is not a determination of the merits of a cause of action, but is to discover whether or not an owner or a charterer is entitled to the benefits of the act.

The legislation involved is as follows:

"The liability of the owner of any vessel, for any embezzlement, loss, or destruction, by any person, of any property, goods, or merchandise, shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred without the privity, or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner in such vessel, and her freight then pending. (R. S. § 4283.)" 46 USCA § 183.

"The charterer (of any vessel, in case he shall man, victual, and navigate such vessel at his own expense, or by his own procurement, shall be deemed the owner of such vessel within the meaning of the provisions of this chapter relating to the limitation of the liability of the owners of vessels; and such vessel, when so chartered, shall be liable in the same manner as if navigated by the owner thereof. (R. S. § 4286.)" 46 USCA § 186.

The petitioner points out that Congress intended to distinguish between two classes of charter parties in enacting the latter section: (1) Contracts of affreightment, and (2) contracts of demise whereunder the charterer takes exclusive possession and navigation of the vessel and becomes the owner pro hac vice. This is doubtless true. The petitioner avers further that it was a charterer of the barge within the meaning of the words of the statute, in that it did "man, victual and navigate such vessel at his own expense or by his own procurement." But do the proofs sustain such contention?

The barge was owned by the Lambert Transportation Company. The written evidence of its agreement with the petitioner is contained in a letter dated September 13, 1929, of the following substance:

"We are pleased to confirm charter to you of the barge 'Jas. Horan' at the rate of $50.00 per day, time to start today, September 13th, and to continue until the boat is returned to us light, in as good condition as when received by you, at the point we desig-

nate within the towing limits of New York Harbor.

"It is understood that all towing, wharfage, and other outside charges that may accrue against this boat, while under charter to you, are to be paid by you, and any protection of the cargo by insurance or otherwise, is to be attended to by you exclusively at your own expense.

"It is our understanding that you will pick up this barge at Pier 16, Stapleton, S. I."

The barge was manned by a crew of but one man. He was Captain Pearson, who was paid the sum of $150 per month by the owner of the barge, the Lambert Transportation Company, and bought his own food. The owner supplied him with living quarters and fuel. It made repairs to the barge. The "one man" crew made daily reports to the owner, and appeared to have charge of the conditions within the barge. The owner had the right to discharge him and replace him with another "crew." The barge, of course, had no motive power, and the duties of Captain Pearson partook much of those of a caretaker for the owner.

Under the charter the petitioner obtained the use of the barge for no definite period of time, but for the number of days it should choose to use it, for the purposes of transporting or storing oil, and it had no interest in conditions upon the barge so long as it was suitably maintained for the purposes for which the barge was chartered.

Petitioner's contention that it "manned, victualled and navigated" is not convincing. The argument is that the petitioner, the charterer, agreed with the owner of the barge that it would charter the barge at the rate of $50 per day, and out of that sum the owner was to pay the wages of the "crew," and he, in turn, would purchase his food. In other words, the petitioner contends that it hired the "crew and the barge together at a flat rate." The type of relief afforded by the statute was not intended to cover such an arrangement, and the court cannot extend its meaning beyond the plain words used by Congress.

In Smith v. Booth (D. C.) 110 F. 680, 682, at page 684, affirmed in 122 F. 626 (C. C. A. 2d), the court, on facts having a definite similarity with those in the case at bar, said: "The liability of the Export Lighterage Company, as charterer of the lighter, does not seem to be within the provision of section 4286 [46 USCA § 186]; inasmuch

as the charterer did not in this case 'man, victual and navigate the lighter at its own expense,' and the defendant Booth is clearly not within this provision. If it be unequal, and in that sense inequitable, that the owner of the vessel should be relieved by the statute from a large part of the damage resulting from the negligence of its own employee, while the charterer who suffers from the same negligence, is not relieved, it can only be said that this relief is a statutory and arbitrary one, and can extend no further than the statute prescribes, and that the charterer in this case is not within it. * * * "

This case was cited with approval in Petition of E. I. Du Pont de Nemours & Company, Inc. (D. C.) 18 F.(2d) 782, decree affirmed in E. I. Du Pont de Nemours & Co. v. Bentley, 19 F.(2d) 354 (C. C. A. 2d).

True it is, as petitioner points out, that in the recital of facts in the case of Smith v. Booth, supra, it does not appear that the Export Lighterage Company actually claimed a limitation of liability as charterer, but the court certainly expressed its opinion as if such privilege had been sought by that charterer, in language that seems sound.

The petitioner likewise pointed to the liberality which characterized the construction of section 4283 (46 USCA § 183) by Mr. Justice Holmes in Flink v. Paladini et al., 279 U. S. 59, 49 S. Ct. 255, 73 L. Ed. 613, but in that case the controversy concerned the limits of liability of a corporation and its component stockholders under a California statute, and how far such liability was modified by the federal statute. I can see no application of that holding to this charterer who seeks limitation of liability under section 4286 (46 USCA § 186).

The petitioner further relies on a number of cases to show that the charter party was a contract of demise under which it became the owner of the barge pro hac vice. Of those cases, it is only necessary to examine White v. Schoonmaker-Connors Co., 265 F. 465 (C. C. A. 3), to show that they are not binding precedents here. The question there was whether or not the charterer of a scow was liable under a charter party to the owner of the scow for damages done to the scow by the negligence of the charterer during the time that the charterer was using it. But this is a proceeding under section 4283 (46 USCA § 183). The distinction between the cases is this: Liability is fixed by the statute in this case to a charterer who mans, victuals, and navigates the chartered vessel; but in the White Case, the liability of the parties was a matter to which the principles of the common law should be applied. The statute clearly states the limitations under which it is applicable.

■ The argument of the petitioner, that if it did not come within the meaning of the words in the statute as to manning "at his own expense," then it was clearly within the meaning of the words "by his own procurement," has no merit. Its argument that it procured the manning and victualing of the barge by paying the owner of the barge who, in turn, furnished and paid the crew, is specious. The petitioner must show facts bringing it within the meaning of the words used in the statute.

■ Moreover, under the rule that the owner is not entitled to limit its liability where the loss is the result of negligence which was occasioned with its privity or knowledge, the petitioner is not entitled to the benefit of section 4283 (46 USCA § 183). The barge was cut adrift at the order of an employee of the petitioner known as one Gifford. In this proceeding he is known as "pumpman" or "night superintendent," depending upon whether the reference is made to him by the petitioner or the claimant, respectively. The fact remains that I am convinced that he was the agent of the petitioner in charge of its plant during the hours in question. A plant of this nature, where more than a half score of men were employed during the night, must have had some one in charge, or at least should have had some one in charge. No one else seems to have occupied such a position but Gifford. It may be that his managerial scope was subordinate to that of other and higher officers, in that he was obliged to telephone to them for instructions on technical subjects or otherwise, but there is no question in my mind that he was the agent of the petitioner in charge of the plant during his particular tour of duty, call it "shift" or otherwise. I further believe that during such time he was the active managing agent of the petitioner to whom reports were made and who gave orders and instructions, and as such the petitioner was charged with his privity and knowledge. Boston Towboat Company v. Darrow-Mann Co., 276 F. 778 (C. C. A. 1), certiorari denied 258 U. S. 620, 42 S. Ct. 272, 66 L. Ed. 794, 795; Kellogg & Sons v. Hicks, 285 U. S. 502, 52 S. Ct. 450, 76 L. Ed. 903.

There is no necessity to discuss the question raised by the claimants as to whether

or not the court has jurisdiction under the facts of this case to limit the liability of the petition. It is clear that the act applies to all types of vessels including barges (Rev. St. § 4289, 46 USCA § 188) and to non-maritime torts (46 USCA § 189). But it would be useless now to discuss the involved question whether the court has the power under the facts in this case to entertain the petition because the proximate cause of the damages for which the petitioner is responsible was the result of the acts of its refinery employees.

The petition should be dismissed.