The **PENNSYLVANIA RAILROAD COMPANY**, Libellant,

v.

**McALLISTER BROTHERS, Inc., and McAllister Lighterage Line, Inc.,** Respondents.

United States District Court
S. D. New York.
Jan. 30, 1956.

Burlingham, Hupper & Kennedy, New York City, for libellant, Eugene Underwood and Richard W. Palmer, New York City, of counsel.

Purdy, Lamb & Catoggio, New York City, for respondents. Edmund F. Lamb, New York City, of counsel.

WEINFELD, District Judge.

Libellant, the Pennsylvania Railroad Company (hereinafter called "Pennsylvania"), seeks to recover from the respondent, McAllister Lighterage Line, Inc. (hereinafter called "McAllister"), $20,000 as indemnity which it paid in settlement of an action brought by one Andrew Ceci against both libellant and respondent in the Supreme Court of the State of New York.[1] Ceci had received injuries on a barge, the McAllister No. 108, which Pennsylvania had chartered from McAllister, the owner. In his complaint he charged both with negligence in the conduct, operation and maintenance of the barge. At the close of the entire case the complaint was dismissed upon the merits as to the defendant McAllister. Thereafter and just before the case was submitted to the jury Pennsylvania agreed to settle with Ceci and now seeks to recover from the respondent the amount it paid to him.

The charter was the usual oral New York harbor barge charter. Pennsylvania as charterer had the use of the barge continuously for one year prior to the accident, which occurred on September 16, 1947. On that day the barge lay outboard another barge alongside the steamship S. S. Whittier Victory, adjacent to Pier 32, North River, New York City, having been dispatched there by Pennsylvania with a cargo destined for the steamship. Ceci, a longshoreman employed by Moore-McCormack Lines, Inc., was engaged with other longshoremen in removing cargo from the barges to the ship. As the last of the cargo on the Mormac No. 1, the barge inboard to the McAllister No. 108, was loaded on the ship, Ceci was instructed by his foreman to board the No. 108 preparatory to unloading her cargo. As he stepped from the inside barge over the rail and onto the deck of the McAllister No. 108, his foot was caught in or went through a hole on the deck of the No. 108, as a result of which he sustained severe injuries. The state court action by Ceci already alluded to was brought to recover resultant damages.

At the threshold of inquiry it is desirable to emphasize that we are not here concerned with any claim by Ceci against McAllister. Ceci's claim for his injuries may have been exclusively limited to Pennsylvania as the charterer of the barge; but the fact that McAllister as owner may not have been liable to Ceci as a third party for any unseaworthiness or any unsafe condition on the barge arising after the charter does not resolve the issue here presented.[2] Our inquiry is directed to the issue of indemnity, as between Pennsylvania as charterer and McAllister as owner, which is predicated upon claimed breach of duty under the charter by the latter.[3]

---

1. McAllister Bros., Inc. was named as a party in both the state court and the present action. In the state court action the complaint against it was dismissed at the close of the plaintiff's case and suit was discontinued against it here. The parties agree that McAllister Lighterage Line, Inc. is the owner-demisor of the barge and if any liability attaches upon the present claim it should be imposed against it.

2. Muscelli v. Frederick Starr Contracting Co., 296 N.Y. 330, 73 N.E.2d 536. However, the authority of this decision, insofar as it holds that an owner-demisor is not liable for unseaworthiness existing at the time of delivery, has been questioned by our Court of Appeals. Cannella v. Lykes Bros. S.S. Co., 2 Cir., 174 F.2d 794, 795.

3. Cf. Ryan Stevedoring Co., Inc. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S. Ct. 232; McFall v. Compagnie Maritime Belge, 304 N.Y. 314, 331, 107 N.E.2d 463.

McAllister's basic contention in resisting Pennsylvania's claim is that the charter was a "demise"; that Pennsylvania was the owner "pro hac vice" and as such was in the exclusive possession and control of the barge at the time of the accident. Accordingly it urges that it was without duty or liability either to Ceci or Pennsylvania. McAllister also urges that Ceci failed to establish any negligence warranting a recovery against Pennsylvania; and that even if he did, the settlement of the action precludes a recovery by way of indemnity, and finally that the dismissal of the state court complaint as against it upon the merits is res judicata.

Thus these are the issues to be determined: (1) was Pennsylvania liable to Ceci upon the law and the facts as adduced in the state court action; (2) if so, is Pennsylvania entitled to recover from McAllister as indemnity the amount it paid to Ceci in settlement of its liability; (3) is the dismissal of the state court action as against McAllister, a codefendant, res judicata so as to bar recovery; (4) does the fact that Pennsylvania settled Ceci's claim against it rather than to await a determination by a jury or a court constitute it a volunteer so as to preclude recovery.

### 1. Ceci's State Court Action

Since McAllister contends that Ceci failed to sustain his burden of proof against Pennsylvania it is necessary first to resolve that issue.[4] Ceci as a longshoreman employed by an independent concern engaged in removing cargo from the McAllister No. 108, was an invitee or business guest aboard the barge. Pennsylvania was under a duty to provide him as such invitee with a reasonably safe place to work.[5] It was also under a non-delegable duty to provide him with a seaworthy vessel.[6] But Ceci confined his claim to negligence.

Pennsylvania concedes its legal duty to Ceci. Further Pennsylvania insists that the evidence against it was such as to indicate its liability for breach of its duty to him and that a verdict against it was not only reasonably likely but almost inevitable.

Upon the instant trial the entire record of the state court action was received in evidence; in addition each party offered specific portions in support of its respective case. After a careful examination of the state court trial minutes I am persuaded Ceci more than sustained his burden of proof upon the entire case. The record abundantly establishes that as Ceci stepped onto the McAllister No. 108 his right foot went through a rotted, water soaked and deteriorated area of the deck, about 5 to 6 inches wide and 8 to 10 inches in length, as a result of which he sustained his injuries; that this condition existed for a sufficient time prior to the accident to charge notice. While McAllister makes some contention that the accident occurred, if at all, on the sheathing covering the deck, about 18 inches from the rail, rather than on the deck proper about 3 to 6 inches from the rail where Ceci and his witnesses claimed it occurred, I do not see that this makes any real difference so far as the failure of Pennsylvania to supply Ceci with a reasonably safe place to work is concerned. The evidence, in my view, was overwhelming that the entire area at or about where Ceci met his injuries had reached such a state of decay and disrepair that it constituted an unsafe and dangerous area. Ceci's version was fully corroborated by other witnesses and no

---

4. The Toledo, 2 Cir., 122 F.2d 255, 257; Chicago, R. I. & P. R. Co. v. United States, 7 Cir., 220 F.2d 939, 941; Cardinal v. State of New York, 304 N.Y. 400, 410–412, 107 N.E.2d 569.

5. McFall v. Compagnie Maritime Belge, 304 N.Y. 314, 323–324, 107 N.E.2d 463; Guerrini v. United States, 2 Cir., 167 F.

2d 352; Fodera v. Booth Am. Shipping Corp., 2 Cir., 159 F.2d 795; Puleo v. H. E. Moss & Co., 2 Cir., 159 F.2d 842; Muratore v. United States, D.C.S.D.N.Y., 100 F.Supp. 276, 281.

6. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099.

substantial evidence in contradiction was offered. Accordingly I conclude that Ceci established that the deck had been permitted to remain decayed and rotted over a considerable time prior to the accident; further that he was free from contributory negligence since he could not see the hole as he stepped onto the No. 108 from the height of the rail of the Mormac No. 1.

## 2. The Instant Suit by Pennsylvania Against McAllister

■ We next consider whether McAllister as owner of the barge is required to indemnify Pennsylvania for the amount paid to Ceci. McAllister seeks to avert a judgment against it by labeling the charter as a "demise". But this begins rather than ends inquiry since in each case the true construction of the charter must be governed by its own special facts.[7]

The parties appear to be in accord that the charter was the "usual oral New York harbor barge charter". McAllister concedes, as indeed it must, that under the oral charter there was an implied warranty that the barge was seaworthy at the time of its delivery to the charterer; but it contends that the warranty does not extend beyond delivery and that it is insulated from any liability to the charterer for any condition of unseaworthiness arising thereafter.

■ Essentially the issue is to be determined by the contractual arrangement of the parties and their conduct in its performance.[8] Campion, the manager of McAllister's lighterage department, was the person through whom Pennsylvania, by telephone call, hired the barge. The hiring was at an agreed daily rate for an indefinite period, terminable at will. McAllister also supplied a captain and paid his straight time hours of service.[9] The rate of hire, in addition to the use of the boat and the services of the captain, also included equipment, the lines and the pumps. Campion testified that Pennsylvania was to return the barge at the end of the charter period generally in the same good order and condition except for ordinary wear and tear, which was for the account of the owner and not for the account of the charterer. The evidence also establishes that for ordinary maintenance of the boat the captain was required to call McAllister which would put the work in hand as necessary; also, that the barge captain was under a duty to report any dangerous condition to McAllister as owner. Significantly, the captain referred all damage reports to McAllister and not to Pennsylvania, although reports pertaining to movements, cargo, time of arrival and departure of the vessel were submitted to Pennsylvania. A representative of the McAllister organization from time to time inspected chartered barges as well as those which it operated to check the condition of the boat, whether it was "obviously in need of repairs", and also the captain's performance of his duties. The evidence also establishes during the course of dealings between the parties, McAllister always made repairs to boats it chartered to Pennsylvania and that Pennsylvania never did. Thus the owner continued to have and to exercise many duties with respect to the barge which negatives the concept that the charterer had "exclusive possession and control" of it.

7. Cf. Muratore v. United States, D.C.S.D. N.Y., 100 F.Supp. 276, 279; Dailey v. Carroll, 2 Cir., 248 F. 466, 467.

8. Cf. Hust v. Moore-McCormack Lines, 328 U.S. 707, 734, 66 S.Ct. 1218, 90 L. Ed. 1534, concurring opinion of Mr. Justice Douglas, overruled on other grounds, Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 788, note 7, 69 S.Ct. 1317, 93 L.Ed. 1692; United States v. Shea, 152 U.S. 178, 189, 190, 14 S.Ct. 519, 38 L.Ed. 403; Santiago v. United States, D.C.S.D.N.Y., 102 F.Supp. 425, 426; C. F. Harms & Co. v. Brooklyn Ash Removal Co., D.C., 290 F. 232, 233–234; Dailey v. Carroll, 2 Cir., 248 F. 466; Brooklyn Ash Removal Co. v. Connell, 225 N.Y. 503, 504, 122 N.E. 620.

9. Pennsylvania paid all overtime.

The barge captain remained the owner's representative and agent so far as the care of the barge and its internal economy were concerned, notwithstanding the charter was a demise of the barge.[10] His duties were to tend to the barge and see that it was "kept seaworthy" and whether she was in safe operating condition.[11]

In furnishing the barge captain as part of the charter arrangement the owner warranted he was fully competent to perform his duties. As we have seen, ordinary wear and tear was for the account of the owner; the barge captain was under a duty to notify McAllister when ordinary maintenance was required; so too he was required to notify his employer of any dangerous condition. Thus it was the captain's duty whenever ordinary wear and tear resulted in an unsafe condition to notify McAllister. And if the bargee neglected to notify the owner of such an unsafe and dangerous condition brought about through ordinary wear and tear which was for the account of the owner, and the owner permitted it to remain without proper repair,[12] in consequence of which the charterer became liable to a third party, the charterer is entitled to recover from the owner as indemnity the amount in which it was cast in damages.[13] The captain being the owner's employee with respect to the care of the barge, the owner is chargeable with his employee's failure to perform his duty.[14] The liability imposed upon the owner is founded upon a breach of the implied covenant of competency of the bargee.[15] To say, as the authorities uniformly hold, that the barge captain remains the agent and servant of the owner in matters involving the care or the internal economy of the vessel, and then to suggest that he can blind his eyes to a notorious condition resulting from ordinary wear and tear, the continued existence of which renders the barge unsafe or unseaworthy, is to make his duty of "caring for the boat", or as Campion put it, "to see to the welfare of his boat", quite meaningless.[16] Thus in Dailey v. Carroll,[17] the Second Circuit Court of Appeals held:

> "[W]e * * * hold that an owner, who lets his boat and man to a chartered owner, pro hac vice thereby, in the absence of special agreement to the contrary, represents that the man or men who go with her are reasonably competent to at-

10. Lynch v. Agwilines, Inc., 2 Cir., 184 F.2d 826, 829; The Fred E. Hasler, D.C.S.D.N.Y., 51 F.2d 779, 781; The Martha R. Grimes, D.C.S.D.N.Y., 49 F. Supp. 591, 594; The Montezuma III, D.C.E.D.N.Y., 66 F.Supp. 562, 565.

11. Price v. Long Dock Co., Inc., D.C.E.D. N.Y., 23 F.Supp. 501, 502; Calhoun v. Daly, D.C.S.D.N.Y., 18 F.Supp. 1005, affirmed on opinion below, 2 Cir., 89 F. 2d 1004; The Fred E. Hasler, D.C.S.D. N.Y., 51 F.2d 779, 781; The Raymond M. White, D.C.E.D.N.Y., 290 F. 454, 457, affirmed sub nom., 2 Cir., 296 F. 1023.

12. Cf. Work v. Leathers, 97 U.S. 379, 380, 24 L.Ed. 1012.

13. Cf. Palazzolo v. Pan-Atlantic S.S. Corp., 2 Cir., 211 F.2d 277, affirmed Ryan Stevedoring Co. v. Pan-Atlantic S.S. Co., 349 U.S. 901, 75 S.Ct. 575, reaffirmed after reargument sub nom. Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232; Barber S.S. Lines, Inc. v. Quinn Bros., Inc., D.C.D.Mass., 104 F.Supp. 78, 80; McFall v. Compagnie Maritime Belgé, 304 N.Y. 314, 331, 107 N.E.2d 463.

14. Cf. Hastorf v. Hudson River Stone Supply Co., D.C.S.D.N.Y., 110 F. 669, 670. See also Rice v. McAllister Lighterage Line, Inc., 115 Misc. 166, 187 N.Y.S. 457, 459.

15. Cf. Cannella v. Lykes Bros. S.S. Co., 2 Cir., 174 F.2d 794, 796. Recent holdings have authoritatively extended the doctrine of seaworthiness to the adequacy and competency of the crew. See, e. g., Boudoin v. Lykes Bros. S.S. Co., 348 U.S. 336, 75 S.Ct. 382, 99 L.Ed. 354.

16. Cf. The Evelyn, 2 Cir., 282 F. 250, 252–253; The Steel Inventor, D.C.D.Md., 35 F.Supp. 986, 994, 995.

17. 248 F. 466, 468. See also Lynch v. Agwilines, Inc., 2 Cir., 184 F.2d 826, 829.

tend to the care or internal economy of the vessel in question * * *.

"If the man whom the owner pays and furnishes for this purpose fails (for example) to watch and arrange his lines according to the exigencies of the tide, he fails to serve the charterer just as much as the boat would fail to serve, should she be unseaworthy through no fault of the charterer."

While Ceci's complaint was cast in terms of negligence, the evidence also establishes that the vessel was unseaworthy. The condition of the rotted and water soaked area where Ceci fell was such as to leave no doubt of its continued existence over an extended period of time prior to the occurrence and that it was the result of ordinary wear and tear. The condition clearly rendered the area an unsafe place in which to work and resulted in the liability imposed upon the charterer, Pennsylvania. There is no suggestion and certainly no proof that the condition was due to any fault of Pennsylvania.

The barge captain failed to perform his duties to care for the boat by failing to observe and report to McAllister the dangerous condition of the deck. The evidence establishes that more than five weeks before the accident to Ceci the area where he received his injury showed signs of decay and rottenness. Had he been competent as the owner impliedly warranted,[18] the condition should have been reported to permit its correction.

His failure to perform his duty and Mc-Allister's failure to remedy the defect resulted in the imposition of liability upon Pennsylvania to Ceci and McAllister must respond for the amount of the settlement,[19] unless it is entitled to prevail upon its other defenses.

O'Boyle v. United States, 2 Cir., 47 F.2d 585; Alpine Forwarding Co. v. Pennsylvania R. Co., 2 Cir., 60 F.2d 734, and other cases cited by respondent, are inapplicable.[20] In those instances the owner sued the charterer for damages where a demised vessel sank or was returned in poor condition contrary to the charterer's agreement to return her in the same condition as received, ordinary wear and tear excepted.

The duty of the owner to make good ordinary wear and tear is emphasized upon analysis of the charter arrangement.[21] The charter was for an indefinite time. In fact, Campion referred to it as a day by day charter. Pennsylvania could return the barge at the end of any day or any period. And if McAllister required the barge for its own use or for repairs it was entitled to its return. Thus for example if Pennsylvania at the end of a day, a week, or any other period, had returned the barge and within a day or week thereafter had rechartered it, McAllister concedes that upon its redelivery the warranty of seaworthiness would again attach. In effect McAllister is saying, in the one instance, it could blind itself to a known condition resulting from ordinary wear and

18. Only recently the Supreme Court noted that a "warranty of workmanlike service * * * is comparable to a manufacturer's warranty of the soundness of its manufactured product." Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 237. Cf. Concurring opinion of Judge Frank in Cannella v. Lykes Bros. S.S. Co., 2 Cir., 174 F.2d 794, 797.

19. "A warranty is a promise that a proposition of fact is true. Theoretically it is extremely difficult to interpret it otherwise than as a promise to make whole the warrantee, if the warranty turns out to be false, since a promise is normally a stipulation for some future conduct by the promisor." The Soerstad, D.C.S.D.N.Y., 257 F. 130.

20. While respondent has not referred to The Ice King, 2 Cir., 261 F. 897, it too is inapplicable. This case involved a limitation of liability proceeding and turned on lack of knowledge on the part of the owners of the activities of the crew members.

21. Cf. C. F. Harms & Co. v. Brooklyn Ash Removal Co., D.C.S.D.N.Y., 290 F. 232, 233–234; Mulvaney v. King Paint Mfg. Co., 2 Cir., 256 F. 612, 615; Cleary Bros. v. Brooklyn Ash Removal Co., D.C. E.D.N.Y., 1931 A.M.C. 1590.

tear, and in the other it was required to restore the barge to a seaworthy condition.

### 3. The Defense of Res Judicata

 McAllister's contention that the dismissal upon the merits of Ceci's complaint as against it is res judicata is without substance. Neither McAllister nor Pennsylvania cross-claimed against the other. Each resisted the contentions of Ceci and sought to defeat his claim as against it. Neither defendant was in an adversary position vis-a-vis the other. Thus the state court dismissal did not adjudicate the rights as between the two defendants, the parties to this litigation, and neither one sought such relief, permitted under New York law.[22] This defense must fail as without merit.[23]

### 4. The Defense of Voluntary Payment

■ The final defense vigorously asserted upon the trial is that Pennsylvania may not recover the sum paid in settlement of Ceci's claim because it was not made under the compulsion of a judgment or with McAllister's consent. It is true that the settlement does not bind the claimed indemnitor nor establish its liability; but equally true it is that the person making the voluntary payment is not deprived of his right to seek enforcement of his claim of indemnity for the amount so paid.[24] All it means is that the indemnitee has assumed the risk of proving that (1) it was liable to the third party; and (2) the reasonableness of the settlement.[25] With respect to the first item, I have already found that Ceci fully established his case against Pennsylvania—as to the second, the respondent has conceded that if in fact Pennsylvania were liable the amount paid was reasonable.

Libellant is entitled to a decree in its favor.

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.

---

22. New York Civil Practice Act, § 264.

23. Moran Towing & Transportation Co., Inc. v. Navigazione Libera Triestina, S.A., 2 Cir., 92 F.2d 37, 40.

24. The Toledo, 2 Cir., 122 F.2d 255, 257; Chicago R. I. & P. Ry. Co. v. United States, 7 Cir., 220 F.2d 939, 941; Ace Tractor & Equip. Co. v. Olympic S.S. Co., 9 Cir., 227 F.2d 274; Oakes v. Graham Towing Co., D.C.E.D.Pa., 135 F. Supp. 485, 487.

25. Donald v. Guy, D.C.E.D.Va., 127 F. 228, 229; Dunn v. Uvalde Asphalt Paving Co., 175 N.Y. 214, 218, 67 N.E. 439; Colonial Motor Coach Corp. v. New York Cent. R. Co., 131 Misc. 891, 228 N.Y.S. 508, 520.