R. C. VINCENT and Another v. LAKE ERIE TRANSPORTATION COMPANY.[1]

January 14, 1910.

Nos. 16,262—(102).

**Vessel Owner Liable to Dock Owner.**

> Where, under stress of weather, a master, for the purpose of preserving his vessel, maintains her moorings to a dock after the full discharge of the vessel's cargo, and the dock is damaged by the striking and pounding of the vessel, the dock owner may recover from the shipowner for the injury sustained, although prudent seamanship required the master to follow the course pursued.

Action in the district court for St. Louis county to recover $1,200 for damage to plaintiffs' wharf, caused by defendant negligently keeping its vessel tied to it. The defendant in its answer alleged that a portion of the cargo was consigned to plaintiffs' dock and on November 27, 1905, its vessel was placed alongside at the place and in the manner designated by plaintiffs and the discharge of cargo continued until ten o'clock that night, that by the time the discharge of cargo was completed the wind had attained so great a velocity the master and crew were powerless to move the vessel. The case was tried before Ensign, J., who denied the defendant's motion to direct a verdict in its favor, and a jury which rendered a verdict in favor of plaintiffs for $500. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*H. R. Spencer,* for appellant.

It is the duty of the owner of the wharf to make suitable preparations for the safety of those who moor their boats along its side. When the public are invited to the wharf of defendant and charged for the security offered them, they have a right to expect and to depend upon the dock owner for such appliances for securing and holding their boats as are sufficient for that purpose. Willey v. Allegheny

[1]Reported in 124 N. W. 221.

City, 118 Pa. St. 490; The Stroma, 50 Fed. 557; The Francisco v. The Waterloo, 79 Fed. 113, affirmed 100 Fed. 332; Pittsburgh v. Grier, 22 Pa. St. 54; Philadelphia & R. Ry. Co. v. Walker, 139 Fed. 855.

A stricter rule of liability prevails where the wharfinger assumes control of the location of the vessel. In such cases it is his duty to select a safe berth, and he will be liable for not doing so. Leary v. Woodruff, 4 Hun, 99.

The evidence establishes the fact that the damage done the dock was by the act of God. That it was an inevitable accident. Jones v. Minneapolis & St. L. R. Co., 91 Minn. 229; The Nicholson and The Adams, 28 Fed. 889.

*Alford & Hunt,* for respondents.

O'BRIEN, J.

The steamship Reynolds, owned by the defendant, was for the purpose of discharging her cargo on November 27, 1905, moored to plaintiffs' dock in Duluth. While the unloading of the boat was taking place a storm from the northeast developed, which at about ten o'clock p. m., when the unloading was completed, had so grown in violence that the wind was then moving at fifty miles per hour and continued to increase during the night. There is some evidence that one, and perhaps two, boats were able to enter the harbor that night, but it is plain that navigation was practically suspended from the hour mentioned until the morning of the twenty ninth, when the storm abated, and during that time no master would have been justified in attempting to navigate his vessel, if he could avoid doing so. After the discharge of the cargo the Reynolds signaled for a tug to tow her from the dock, but none could be obtained because of the severity of the storm. If the lines holding the ship to the dock had been cast off, she would doubtless have drifted away; but, instead, the lines were kept fast, and as soon as one parted or chafed it was replaced, sometimes with a larger one. The vessel lay upon the outside of the dock, her bow to the east, the wind and waves striking her starboard quarter with such force that she was con-

stantly being lifted and thrown against the dock, resulting in its damage, as found by the jury, to the amount of $500.

We are satisfied that the character of the storm was such that it would have been highly imprudent for the master of the Reynolds to have attempted to leave the dock or to have permitted his vessel to drift away from it. One witness testified upon the trial that the vessel could have been warped into a slip, and that, if the attempt to bring the ship into the slip had failed, the worst that could have happened would be that the vessel would have been blown ashore upon a soft and muddy bank. The witness was not present in Duluth at the time of the storm, and, while he may have been right in his conclusions, those in charge of the dock and the vessel at the time of the storm were not required to use the highest human intelligence, nor were they required to resort to every possible experiment which could be suggested for the preservation of their property. Nothing more was demanded of them than ordinary prudence and care, and the record in this case fully sustains the contention of the appellant that, in holding the vessel fast to the dock, those in charge of her exercised good judgment and prudent seamanship.

It is claimed by the respondent that it was negligence to moor the boat at an exposed part of the wharf, and to continue in that position after it became apparent that the storm was to be more than usually severe. We do not agree with this position. The part of the wharf where the vessel was moored appears to have been commonly used for that purpose. It was situated within the harbor at Duluth, and must, we think, be considered a proper and safe place, and would undoubtedly have been such during what would be considered a very severe storm. The storm which made it unsafe was one which surpassed in violence any which might have reasonably been anticipated.

The appellant contends by ample assignments of error that, because its conduct during the storm was rendered necessary by prudence and good seamanship under conditions over which it had no control, it cannot be held liable for any injury resulting to the property of others, and claims that the jury should have been so instructed. An analysis of the charge given by the trial court is not necessary, as in our opinion the only question for the jury was the amount of damages

which the plaintiffs were entitled to recover, and no complaint is made upon that score.

The situation was one in which the ordinary rules regulating property rights were suspended by forces beyond human control, and if, without the direct intervention of some act by the one sought to be held liable, the property of another was injured, such injury must be attributed to the act of God, and not to the wrongful act of the person sought to be charged. If during the storm the Reynolds had entered the harbor, and while there had become disabled and been thrown against the plaintiffs' dock, the plaintiffs could not have recovered. Again, if while attempting to hold fast to the dock the lines had parted, without any negligence, and the vessel carried against some other boat or dock in the harbor, there would be no liability upon her owner. But here those in charge of the vessel deliberately and by their direct efforts held her in such a position that the damage to the dock resulted, and, having thus preserved the ship at the expense of the dock, it seems to us that her owners are responsible to the dock owners to the extent of the injury inflicted.

In Depue v. Flatau, 100 Minn. 299, 111 N. W. 1, 8 L. R. A. (N. S.) 485, this court held that where the plaintiff, while lawfully in the defendants' house, became so ill that he was incapable of traveling with safety, the defendants were responsible to him in damages for compelling him to leave the premises. If, however, the owner of the premises had furnished the traveler with proper accommodations and medical attendance, would he have been able to defeat an action brought against him for their reasonable worth?

In Ploof v. Putnam (Vt.) 71 Atl. 188, 20 L. R. A. (N. S.) 152, the supreme court of Vermont held that where, under stress of weather, a vessel was without permission moored to a private dock at an island in Lake Champlain owned by the defendant, the plaintiff was not guilty of trespass, and that the defendant was responsible in damages because his representative upon the island unmoored the vessel, permitting it to drift upon the shore, with resultant injuries to it. If, in that case, the vessel had been permitted to remain, and the dock had suffered an injury, we believe the shipowner would have been held liable for the injury done.

Theologians hold that a starving man may, without moral guilt, take what is necessary to sustain life; but it could hardly be said that the obligation would not be upon such person to pay the value of the property so taken when he became able to do so. And so public necessity, in times of war or peace, may require the taking of private property for public purposes; but under our system of jurisprudence compensation must be made.

Let us imagine in this case that for the better mooring of the vessel those in charge of her had appropriated a valuable cable lying upon the dock. No matter how justifiable such appropriation might have been, it would not be claimed that, because of the overwhelming necessity of the situation, the owner of the cable could not recover its value.

This is not a case where life or property was menaced by any object or thing belonging to the plaintiffs, the destruction of which became necessary to prevent the threatened disaster. Nor is it a case where, because of the act of God, or unavoidable accident, the infliction of the injury was beyond the control of the defendant, but is one where the defendant prudently and advisedly availed itself of the plaintiffs' property for the purpose of preserving its own more valuable property, and the plaintiffs are entitled to compensation for the injury done.

Order affirmed.

LEWIS, J. (dissenting).

I dissent. It was assumed on the trial before the lower court that appellant's liability depended on whether the master of the ship might, in the exercise of reasonable care, have sought a place of safety before the storm made it impossible to leave the dock. The majority opinion assumes that the evidence is conclusive that appellant moored its boat at respondents' dock pursuant to contract, and that the vessel was lawfully in position at the time the additional cables were fastened to the dock, and the reasoning of the opinion is that, because appellant made use of the stronger cables to hold the boat in position, it became liable under the rule that it had voluntarily made use of the property of another for the purpose of saving its own.

In my judgment, if the boat was lawfully in position at the time the storm broke, and the master could not, in the exercise of due care, have left that position without subjecting his vessel to the hazards of the storm, then the damage to the dock, caused by the pounding of the boat, was the result of an inevitable accident. If the master was in the exercise of due care, he was not at fault. The reasoning of the opinion admits that if the ropes, or cables, first attached to the dock had not parted, or if, in the first instance, the master had used the stronger cables, there would be no liability. If the master could not, in the exercise of reasonable care, have anticipated the severity of the storm and sought a place of safety before it became impossible, why should he be required to anticipate the severity of the storm, and, in the first instance, use the stronger cables?

I am of the opinion that one who constructs a dock to the navigable line of waters, and enters into contractual relations with the owner of a vessel to moor the same, takes the risk of damage to his dock by a boat caught there by a storm, which event could not have been avoided in the exercise of due care, and further, that the legal status of the parties in such a case is not changed by renewal of cables to keep the boat from being cast adrift at the mercy of the tempest.

JAGGARD, J.

I concur with Lewis, J.