SWAN-FINCH OIL CORPORATION AND STANDARD OIL COMPANY, CORPORATIONS, PLAINTIFFS, v. WARNER-QUINLAN COMPANY, DEFENDANT.

Decided June 23, 1933.

For the plaintiffs, *Arthur T. Vanderbilt.*

For the defendant, *John Milton.*

PORTER, S. C. C. This case was submitted to me without a jury, by stipulation of the parties, to try the issues relating to the defendant's legal liability.

The plaintiffs' property was damaged or destroyed by fire which they claim was occasioned by the wrongful acts of the defendant, for which damages are sought.

The pertinent facts, briefly, are as follows:

On September 14th, 1929, the defendant had moored to its dock on the west side of Staten Island Sound in the city of Linden the wooden barge, James Horan, together with other boats. The barge had on board a cargo of about six thousand barrels of crude fuel oil. About six-thirty in the morning lightning struck the barge and ignited the oil. The fire made rapid headway. Within a few minutes flames extended from the bow to amidships and arose thirty to thirty-five feet in the air. The fire was discovered immediately, and alarms were sent both to the Linden fire department and to the New York fire department.

There was available on the defendant's property a crew of about ten men under the charge of the night superintendent, Mr. Gifford. There were also available on the dock fire-

fighting facilities including a quantity of foamite powder which is generally used in fighting oil fires. Preparations were made immediately to fight the fire by the men under Mr. Gifford's direction.

About ten minutes after the fire started Mr. Gifford cast the barge adrift by cutting the hawsers which tied it to the dock. With the assistance of his men he pushed the barge out into the stream. There was an offshore wind. At the time the barge was cast adrift, the fire was still confined to the oil in the barge. No fire was afterwards communicated to the other boats or to the dock of the defendant.

Before the casting adrift of the barge, preparations were made to fight the fire. A fire hose was put into use and a stream of water was directed onto the dock. The foamite powder was not used, nor was any other effort made to fight the fire itself. Within about twenty minutes of the start of the fire, the flames spread throughout the entire length of the barge.

Almost immediately after the barge was cut adrift, a passing tug came to the dock, removed one or more of the boats, and then pushed the blazing barge across the stream to Prall's Island some eight hundred feet distant from the dock where it had been. Later, a city of New York fire boat arrived on the scene and made unsuccessful efforts to quench the fire.

About two-thirty in the afternoon the barge, still aflame, floated with the tide away from the island. It was pursued by a city of New York fire boat, and every effort was made to keep the fire from spreading to other boats and property, and also to beach the burning barge. The barge was beached on Buckwheat Island some distance from Prall's Island, where it remained about a half hour before it again floated away.

Finally, at about four-forty-five in the afternoon, the barge came into collision with the docks of the plaintiffs, which collision caused the blazing oil to escape from the hull and to set fire to the plaintiffs' property. This fire spread very rapidly, and was not under control for some six hours. The location of the property of the plaintiffs is also on the westerly side of Staten Island sound, in Linden, and about two and a half miles north of the defendant's property.

The plaintiffs charge, first, that the defendant was guilty of an actionable wrong under the circumstances in casting adrift this blazing barge; second, that the defendant was guilty of negligence in transporting inflammable crude oil in a wooden hull and mooring the boat to its dock without adequate and proper fire protection facilities; and, third, that the consequent damage was the proximate result of these wrongful acts.

The defendant argues, first, that there is no proof of negligence on its part; second, that the casting adrift of the barge was justified by reason of the inevitable necessity that existed; third, that even if such act was an actionable wrong the damage to the plaintiffs' property was not the proximate result thereof; and, fourth, that the plaintiffs were guilty of negligence which contributed to the occurrence.

It is my opinion that the plaintiffs have established, by the clear weight of the testimony, their right to recover. The defendant's act in casting adrift this burning cargo of oil, in order to save its own property from destruction, was a violation of a legal duty owing to the plaintiffs and others whose property was thus put in jeopardy. While it cannot be said that it was intended by the casting adrift of this barge to set on fire the property of the plaintiffs or anyone else, nevertheless it is clear that the intent of the defendant was to save its own property irrespective of any danger or consequence to the property of others. The law cannot allow one deliberately to cast upon another any dangerous instrumentality, even in self-defense, without being answerable for the natural consequences which follow. *Whalley* v. *Lancashire and Yorkshire Railway,* 53 *L. J. Q. B.* 285; *Sherman* v. *Mott,* 21 *F. C.* 1277; *Vincent* v. *Lake Erie Transportation Co.,* 109 *Minn.* 456; 124 *N. W. Rep.* 221; *Lalla* v. *New Orleans and N. W. Railway,* 59 *So. Rep.* 250. There appears to be no New Jersey decision in support of this principle of law.

If the principle be sound, as I believe it to be, then the act complained of cannot be excused because of the emergency or the necessity. Nor can it be excused on the ground that an act of God was the immediate cause of the catastrophe. It makes no difference, it seems to me, what the primary cause

of the fire was. The act of casting the boat adrift was dissociated from the act of God. It was a new and different act, creating a new hazard. *New Brunswick Steamship and Coach Transportation Co.* v. *Tiers,* 24 *N. J. L.* 697.

I am also of the opinion that there was established, as a matter of fact, by the clear weight of the testimony, negligence on the part of the defendant. The act of using a wooden barge for the transportation of inflammable fuel oil in such a large quantity, and mooring the barge to the dock in close proximity to other shipping, without greater fire protection, and then casting the blazing barge adrift, was not the exercise of the care which ordinary prudence required under the circumstances.

There remains the question of proximate cause. I cannot agree with the defendant that the damage to the plaintiffs' property was not the proximate and efficient result of the casting adrift of the barge. On the contrary, there was no intervening, culpable and efficient agency which broke the chain of causation, no negligence by any other actor in the premises, no elements except natural and casual ones such as wind and tide which intervened between the starting of the wrongful act and its conclusion.

I find no facts which support the charge on the defendant that there were acts of negligence on the part of the plaintiffs which contributed to the occurrence.

The verdict will be for the plaintiffs, in such amounts as may be assessed by a jury to be impaneled for that purpose.