GEORGE E. SEAMAN, JR., PROSECUTOR, v. COUNTY OF MONMOUTH, RESPONDENT.

Submitted October term, 1934—Decided February 16, 1935.

NOTE—The year 1937 was inadvertently given in the New Jersey Advance Reports.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the prosecutor, *Kremer & Proctor.*

For the respondent, *Walter Fox (Samuel Y. Hampton,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. On January 2d, 1934, the board of chosen freeholders of the county of Monmouth, respondent herein, held its organization meeting for the year 1934. At this meeting it passed, among others, a resolution, "that the terms and employment of all officers, agents and employes of the

county, whose terms have not been fixed by law, be and the same are hereby declared vacant as of this date and that the Clerk of this Board be and is hereby authorized and directed to notify all such officers, agents and employes of the action by this Board this day taken."

Pursuant to the aforesaid resolution the clerk of the board did, on January 4th, 1934, notify the prosecutor of the passage of the resolution and authorized him to surrender all property in his possession and belonging to the board to his successors, one Thomas Oakes, who was appointed in his place, on January 2d, 1934, for the term of one year, at the salary of $1,200 for the year.

The prosecutor challenges the propriety of his dismissal.

It appears that on July 30th, 1923, prosecutor was appointed, without a fixed term, as officer on the Shrewsbury river bridge (S-31) between Rumson and Navesink, in Monmouth county, at a salary of $1,800 a year. And while no formal resolution of his appointment is made to appear, nevertheless, the proof is plenary that he was so appointed. His name appeared on the payroll in August, 1923, and continued to be thereon until his dismissal; that a resolution was adopted by the board at each of its monthly meetings for the payment of those holding positions and that the name of the prosecutor regularly appeared on a list appended to and made part of each monthly resolution; that the payment was made monthly by a voucher of the respondent and charged to "bridges" or "bridge appropriations," at the rate of $5 a day. One of the former members of the board, who served for about thirteen years, corroborated the appointment of the prosecutor; and that the resolutions were introduced monthly for the payment of the salaries for those, as prosecutor herein, who held a "position" with the board.

Prosecutor's duties were "to protect life, limb and property; and to take care of traffic; and keep people from fishing over the bridge, as there are no sidewalks, no pedestrian paths; to keep overloaded trucks off the bridge  *  *  *  and to maintain peace." Others described the bridge as an old structure, and therefore needed special supervision. Another

witness testified that "the bridge is very treacherous and a very narrow one and with no foothpaths, and they have to be very particular about the speed of motor traffic because of that and overloaded trucks * * *." Prosecutor's duties were of a permanent and continuous character. He performed those duties with marked regularity from the day of his appointment in 1923 to the day of his dismissal in 1934. No complaint or charge was ever made against him. He is a war veteran. He thus claims the benefit and protection of what is commonly known as the "War Veterans' act." Chapter 29, *Pamph. L.* 1929, *p.* 57.

The primary question presented, therefore, is whether, under the facts of the instant case, the prosecutor held a "position" as distinguished from a mere "employment."

We are of the opinion that the prosecutor held a "position" and is clearly entitled to his asserted rights, as a world war veteran, in the premises. The law applicable is clear and well settled. It will serve no useful purpose to restate it. Suffice it to direct attention to a recent decision of this court in which the cases on the subject are collated. *Board of Education of Bayonne* v. *Bidgood,* 11 *N. J. Mis. R.* 735; 168 *Atl. Rep.* 162.

It is next argued that the prosecutor's failure to apply for the instant writ at an earlier day is unreasonable, *i. e.,* he is guilty of laches and therefore the writ should be dismissed. This contention is clearly without merit. This court has had the occasion, in *Parker* v. *Borough of Point Pleasant,* 11 *N. J. Mis. R.* 535; 167 *Atl. Rep.* 217, to make the observation that there is no hard and fixed rule that can be laid down for guidance, under all circumstances, on this subject. The application for the writ must, of course, be prosecuted with due diligence. And what is due diligence must be determined on the facts of each particular case. After the prosecutor was dismissed, conferences were held by him and others similarly affected with the board to the end that each might be reinstated or restored to their former status. These conferences continued until and including the meeting of the board held on May 14th, 1934. The board remained obdurate.

Whereupon application for a writ was made and granted on May 23d, 1934. Obviously, the question of laches is simply not present in this case.

And lastly respondent asserts that its action was motivated and taken in good faith and in the interest of economy. Proof and not mere bare protestations must form the foundation for such assertions. It is significant that not a scintilla of proof was offered to form a basis upon which the contentions of economic expediency and good faith might be rested. On the contrary, another was immediately appointed in prosecutor's place.

Respondent could not, of course, reduce the emoluments of the prosecutor's position for the purpose of terminating his services. (Chapter 14, section 3, *Pamph. L.* 1907, *p.* 38; 4 *Comp. Stat., p.* 4874.) Assuming, but not so deciding, for the dismissal of the prosecutor is not rested on such a contention, that respondent could have reduced prosecutor's salary in the interest of economy, the best evidence of good faith, of fair treatment of the prosecutor in the premises, factors entirely lacking herein, would have been, at least, to offer the prosecutor the privilege of continuing in his position at the reduced or same salary the board undertook to pay to his successor.

Nor are we at all persuaded by the argument now made that if prosecutor's position is sustained, the board shall be obliged to make a double payment—to the extent that it has already paid the present incumbent. For here, again, the cry of economy and good faith are clearly mere words; they cannot be squared with the action of the board. The board apparently directed its solicitor, a former attorney-general of this state, to examine into the claim made by the prosecutor and others. This he did; and, on April 17th, 1934, in a comprehensive written opinion, in which he reviewed the cases on the subject, advised the board, *inter alia,* that the prosecutor was the holder of a position within the meaning of what is commonly called the War Veterans act and that his discharge, without hearing, was in violation thereof. But the majority of the board refused to heed the opinion. In

fact they acted directly contrary thereto. In face of such arbitrary action, its present claim of economy and good faith, do not, therefore, ring true.

We conclude, therefore, that prosecutor has a "position" within the meaning of the protective War Veterans act, and that his dismissal was illegal.

The resolution of dismissal, in so far as it relates to the prosecutor, is set aside, with costs.