# Syllabus

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

PEOPLE v FREDERICK
PEOPLE v VAN DOORNE

Docket Nos. 153115 and 153117. Argued on application for leave to appeal March 9, 2017. Decided June 1, 2017.

Michael Frederick and Todd Van Doorne were separately charged in the Kent Circuit Court with various drug offenses after seven officers from the Kent Area Narcotics Enforcement Team made unscheduled visits to the defendants' respective homes during the predawn hours on March 18, 2014. Officers knocked on Frederick's door around 4:00 a.m. and on Van Doorne's door around 5:30 a.m. Officers woke defendants and their families for the purpose of questioning each defendant about marijuana butter that they suspected the defendants possessed. Both defendants subsequently consented to a search of their respective homes, and marijuana butter and other marijuana products were recovered from each home. Defendants moved to suppress the evidence, and the court, Dennis B. Leiber, J., denied both motions, concluding that the officers had not conducted a search by knocking on defendants' doors during the predawn hours and that the subsequent consent searches were valid. Defendants sought interlocutory leave to appeal, which the Court of Appeals denied in separate unpublished orders, entered October 15, 2014 (Docket Nos. 323642 and 323643). Defendants sought leave to appeal in the Supreme Court. The Supreme Court, in lieu of granting leave to appeal, remanded the cases to the Court of Appeals for consideration as on leave granted and directed the Court of Appeals to address whether the "knock and talk" procedure conducted in these cases was consistent with the Fourth Amendment as articulated in *Florida v Jardines*, 569 US ___; 133 S Ct 1409 (2013). *People v Frederick*, 497 Mich 993 (2015); *People v Van Doorne*, 497 Mich 993 (2015). The Court of Appeals consolidated the two cases and issued a split opinion. 313 Mich App 457 (2015). The majority concluded that the officers' predawn "knock and talk" visits were within the scope of the public's implied license because homeowners would be unsurprised to find a predawn visitor delivering a newspaper or seeking emergency assistance, but the dissenting judge concluded that the police conduct violated the Fourth Amendment because the searches, which occurred during hours at which a homeowner would not expect visitors, were outside the scope of a proper knock and talk procedure. Defendants sought leave to appeal, and the Supreme Court ordered and heard oral argument on whether to grant the application or take other action. 499 Mich 952 (2016).

In a unanimous opinion by Justice MCCORMACK, in lieu of granting leave to appeal, the Supreme Court *held*:

The scope of the implied license to approach a house and knock is time-sensitive; it generally does not extend to predawn approaches. While approaching a home with the purpose of gathering information is not, standing alone, a Fourth Amendment search, when information-gathering is conjoined with a trespass, a Fourth Amendment search has occurred. In these cases, the police conduct exceeded the scope of the implied license to knock and talk because the officers approached the defendants' respective homes during the predawn hours; therefore, the officers trespassed on Fourth-Amendment-protected property. And because the officers trespassed while seeking information, they performed searches in violation of the Fourth Amendment.

1. The proper scope of a knock and talk is determined by the implied license that is granted to the general public. Therefore, a police officer not armed with a warrant may approach a home and knock precisely because that is no more than any private citizen might do. When police officers stray beyond what any private citizen might do, they have strayed beyond the bounds of a permissible knock and talk; in other words, the officers are trespassing. Just as there is no implied license to bring a drug-sniffing dog to someone's front porch, there is generally no implied license to knock at someone's door in the middle of the night. Background social norms that invite a visitor to the front door typically do not extend to a visit in the middle of the night. Accordingly, the scope of the implied license to approach a house and knock is time-sensitive; it generally does not extend to predawn approaches. Additionally, while approaching a home with the purpose of gathering information is not, standing alone, a Fourth Amendment search, when information-gathering is conjoined with a trespass, a Fourth Amendment search has occurred. In these cases, the police officers exceeded the scope of the implied license to knock and talk because the officers approached defendants' respective homes without warrants during the predawn hours; therefore, the officers trespassed on Fourth-Amendment-protected property. And because the officers trespassed while seeking information about defendants' alleged possession of marijuana butter, they performed searches in violation of the Fourth Amendment.

2. Consent searches, when voluntary, are an exception to the warrant requirement. The voluntariness question turns on whether a reasonable person would, under the totality of the circumstances, feel able to choose whether to consent. Evidence obtained through an illegal search or seizure is tainted by that initial illegality unless sufficiently attenuated from it. Thus, even when consent is voluntary, if it is not attenuated from the unconstitutional search, the evidence must be suppressed. Three factors are considered in determining whether consent is sufficiently attenuated: (1) the temporal proximity of the illegal act and the alleged consent, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct. In these cases, because the trial court determined that there was no Fourth Amendment violation, it did not consider whether the subsequent consent was attenuated from the illegality. Therefore, the cases had to be remanded to the trial court for consideration of that question in the first instance.

Reversed and remanded to the Kent Circuit Court to determine whether defendants' consent to search was attenuated from the officers' illegal search.

©2017 State of Michigan

# OPINION

Chief Justice:
Stephen J. Markman

Justices:
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder

FILED June 1, 2017

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                    No. 153115

MICHAEL CHRISTOPHER FREDERICK,

      Defendant-Appellant.

_____

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                    No. 153117

TODD RANDOLPH VAN DOORNE,

      Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

McCormack, J.

In these consolidated cases, we consider the constitutionality of two early morning searches of the defendants' homes. We conclude that the police conduct in both cases was unconstitutional; these were not permissible "knock and talks," but rather warrantless searches. Because of these illegal searches, the defendants' consent to search—even if voluntary—is invalid unless it is sufficiently attenuated from the illegality. Accordingly, we reverse the Court of Appeals' contrary determination and remand these cases to the Kent Circuit Court for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

During the predawn hours on March 18, 2014, seven officers from the Kent Area Narcotics Enforcement Team (KANET) made unscheduled visits to the defendants' homes. Both defendants were employees of the corrections division of the Kent County Sheriff Department. Their names had come up in a criminal investigation, and KANET decided to perform these early morning visits to the defendants' homes rather than waiting until daytime to speak with the defendants (or seeking search warrants). KANET knocked on defendant Michael Frederick's door around 4:00 a.m. and on defendant Todd Van Doorne's door around 5:30 a.m. Lieutenant Al Roetman, who was present at both searches, testified that everyone appeared to be asleep at both houses.

Both defendants and their families were surprised and alarmed by the intrusions. Van Doorne considered arming himself, as did Frederick's wife. Nonetheless, both defendants answered the door after a few minutes of knocking—each thinking that there must have been some sort of emergency.

2

Instead, each defendant found himself confronted with a group of police officers. The officers asked each defendant about marijuana butter that they suspected the defendants possessed. After a conversation with each defendant, during which the defendants were read their *Miranda*[1] rights, both defendants consented to a search of their homes and signed a consent form to that effect. Marijuana butter and other marijuana products were recovered from each house.

The defendants were charged with various drug offenses. Both moved to suppress evidence of the marijuana products found in their homes. The trial court denied both motions. The court concluded that KANET had not conducted a search by approaching the home and knocking, and that the subsequent consent search was a valid, voluntary search. The court distinguished *Florida v Jardines*, 569 US ___; 133 S Ct 1409; 185 L Ed 2d 495 (2013), noting that the police here did not use a drug-sniffing dog or otherwise try to search the home without knocking. Rather, because the police approached the home and knocked, the trial court held that these were valid knock and talks.

The defendants sought interlocutory leave to appeal, which the Court of Appeals denied. The defendants then sought leave to appeal in this Court. In lieu of granting leave to appeal, we remanded the cases to the Court of Appeals for consideration as on leave granted. *People v Frederick*, 497 Mich 993 (2015); *People v Van Doorne*, 497 Mich 993 (2015). We directed the Court of Appeals to address "whether the 'knock and talk' procedure conducted in [these cases] is consistent with US Const, Am IV, as

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

3

articulated in *Florida v Jardines . . . .*" *Frederick*, 497 Mich 993; *Van Doorne*, 497 Mich 993.

On remand, the Court of Appeals issued a split opinion. The majority concluded that the knock and talk procedures at issue were permitted by the Fourth Amendment. *People v Frederick*, 313 Mich App 457, 461; 886 NW2d 1 (2015). The majority emphasized that the officers approached the home, knocked, and waited to be received, and "*Jardines* plainly condones such conduct." *Id*. at 469. Though the police visits here occurred during the early morning hours, the majority concluded that they were nonetheless within the scope of the implied license because homeowners would be unsurprised to find a predawn visitor delivering a newspaper or seeking emergency assistance. *Id*. at 481.

Judge SERVITTO dissented. She concluded that the police conduct violated the defendants' Fourth Amendment rights. *Id*. at 496 (SERVITTO, J., dissenting). First, Judge SERVITTO noted that the *Jardines* majority and dissent had seemed to agree, in dicta, that nighttime visits would be outside the scope of the implied license. *Id*. at 487-488. Further, Judge SERVITTO reasoned that the validity of a knock and talk is premised on "the implied license a homeowner extends to the public-at-large." *Id*. at 496. Because the hours the police arrived at the defendants' homes are not times at which most homeowners expect visitors, she concluded that the visits were outside the scope of a proper knock and talk. *Id*.

## II. ANALYSIS

In general, a search or seizure within a home or its curtilage without a warrant is per se an unreasonable search under the Fourth Amendment. *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996); *Katz v United States*, 389 US 347, 357; 88 S Ct 507; 19 L Ed 2d 576 (1967). Two arguments have been presented as to why this police conduct was lawful. First, the prosecution argues that the initial approach was a knock and talk, not a search. Second, the prosecution argues that the search that followed that initial approach was a consent search.

## A. KNOCK AND TALK

A "knock and talk," when performed within its proper scope, is not a search at all. *Jardines*, 569 US at ___; 133 S Ct at 1415. The proper scope of a knock and talk is determined by the "implied license" that is granted to "solicitors, hawkers, and peddlers of all kinds." *Id*. at ___; 133 S Ct at 1415 (citation and quotation marks omitted). "Thus, a police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.' " *Id*. at ___; 133 S Ct at 1416, quoting *Kentucky v King*, 563 US 452, 469; 131 S Ct 1849; 179 L Ed 2d 865 (2011).

In *Jardines*, the police approached a house via the front walk with a drug dog. *Jardines*, 569 US at ___; 133 S Ct at 1413. The dog alerted, indicating that it smelled contraband, and eventually sat at the front door of the home, where the odor was strongest. *Id*. Using this information, the police obtained a warrant, and their search of the home revealed marijuana plants. *Id*.

Justice Scalia, writing for the Court, employed a property-rights framework[2] to conclude that the prewarrant conduct of the police constituted a search. The Court distinguished the case from *King*, in which the Court had held that a knock and talk was *not* a search, because the police in *Jardines*, unlike the police in *King*, had trespassed; although the public, and thus the police, generally have an implied license to "approach the door by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave," the police in *Jardines* had not complied with the scope of that implied license. *Id*. at ___; 133 S Ct at 1415-1416. "[I]ntroducing a trained police dog to explore the area around the home in hopes of discovering incriminating evidence

---

[2] In *Katz v United States*, 389 US 347, the Court broke with tradition by considering not whether the government had trod on the defendant's property interests, but rather whether it had violated his privacy interests. Subsequently, the Court clarified that *Katz* had not replaced the property-interests test; *Katz* merely added to it. *Alderman v United States*, 394 US 165, 180; 89 S Ct 961; 22 L Ed 2d 176 (1969) ("[W]e [do not] believe that *Katz*, by holding that the Fourth Amendment protects persons and their private conversations, was intended to withdraw any of the protection which the Amendment extends to the home . . . .").

The Court reaffirmed the importance of the property-rights analysis in the Fourth Amendment context in *United States v Jones*, 565 US 400; 132 S Ct 945; 181 L Ed 2d 911 (2012). In that case, the Court held that the warrantless installation of a GPS tracking device on the exterior of a Jeep and subsequent tracking of the defendant's movements on public roads constituted a search, despite the Court's earlier holdings that tracking of a defendant's movements on public roads was not a search. *Id*. at 404; cf. *United States v Knotts*, 460 US 276; 103 S Ct 1081; 75 L Ed 2d 55 (1983) (holding that no search occurred when law enforcement tracked on public roads the location of a beeper that had been installed in a container before the defendant's possession of the container). The *Jones* Court distinguished *Knotts* on the ground that it did not involve a trespass. *Jones*, 565 US at 409-410. The violation of Jones's property rights, combined with the subsequent information-gathering, constituted a search. *Id*. at 407-408. The Court cautioned that "[t]respass alone does not qualify, but there must be conjoined with that . . . an attempt to find something or to obtain information." *Id*. at 408 n 5.

is something else.  There is no customary invitation to do *that*."  *Id*. at ___; 133 S Ct at 1416.  Thus, the police had trespassed on Fourth-Amendment-protected property.[3]  *Id*.

Consistently with *United States v Jones*, 565 US 400; 132 S Ct 945; 181 L Ed 2d 911 (2012), the *Jardines* Court required not only a trespass, but also some attempted information-gathering, to find that a search had occurred.  *Jardines*, 569 US at ___; 133 S Ct at 1414; *Jones*, 565 US at 408 n 5 ("[P]ost-*Katz* we have explained that an actual trespass is neither necessary *nor sufficient* to establish a constitutional violation. . . . Trespass alone does not qualify [as a search], but there must be conjoined with that . . . an attempt to find something or to obtain information.") (citations and quotation marks omitted).  The *Jardines* Court concluded that the police conduct there included information-gathering, such that the behavior constituted a warrantless search of the curtilage. *Jardines*, 569 US at ___; 133 S Ct at 1417.

It is also clear from *Jones* and *Jardines* that "information-gathering" is not synonymous with a Fourth Amendment "search."  Both *Jones* and *Jardines* held that conduct that would not amount to a search, standing alone, was nonetheless information-gathering.  The information-gathering in *Jardines* was the use of a drug-sniffing dog—conduct that the Supreme Court of the United States has held is not a search when the

---

[3] The *Jardines* Court distinguished between trespasses that implicate the Fourth Amendment and those that do not.  For instance, police may trespass and search in open fields without violating the Fourth Amendment because "an open field . . . is not one of those protected areas enumerated in the Fourth Amendment." *Jones*, 565 US at 411, citing *Oliver v United States*, 466 US 170, 177; 104 S Ct 1735; 80 L Ed 2d 214 (1984). But because the curtilage is part of the home, *Oliver*, 466 US at 180, and homes are protected by the Fourth Amendment, trespassing on the curtilage implicates Fourth Amendment protections.

police have not trespassed. *Id*. at \_\_\_; 133 S Ct at 1414; *Illinois v Caballes*, 543 US 405, 410; 125 S Ct 834; 160 L Ed 2d 842 (2005) (holding that a dog sniff conducted during a lawful traffic stop did not implicate legitimate privacy interests). Similarly, in *Jones*, the information-gathering was the tracking of the defendant's location on public streets—conduct that the Supreme Court has also held is not a search when the police have not trespassed. *Jones*, 565 US at 408 n 5; *United States v Knotts*, 460 US 276, 285; 103 S Ct 1081; 75 L Ed 2d 55 (1983) (holding that a person traveling in an automobile on public roads has no reasonable expectation of privacy in his or her location). But information-gathering that is not a search nevertheless becomes a search when it is combined with a trespass on Fourth-Amendment-protected property.[4]

In *Jardines*, the majority and dissenting opinions address in dicta one issue that is particularly relevant here. In his dissent, Justice Alito noted that, "as a general matter, . . . a visitor [may not] come to the front door in the middle of the night without an express invitation." *Jardines*, 569 US at \_\_\_; 133 S Ct at 1422 (Alito, J., dissenting). In response, the majority opinion reasoned that the dissent "quite rightly" relied on the fact that a nighttime knock would be alarming in concluding that nightime visits would be outside the scope of the implied license. *Id*. at \_\_\_; 133 S Ct at 1416 n 3 (opinion of the Court) ("We think a typical person would find it a cause for great alarm (the kind of

---

[4] For example, looking into the windows of a home from a sidewalk or other public area is not a search. But it *is* information-gathering, such that, if the police trespass on the home's curtilage and peer through the windows from that vantage point, they have conducted a search. The trespass converts conduct that would not otherwise constitute a search into a search.

reaction the dissent quite rightly relies upon to justify its no-night-visits rule) to find a stranger snooping about his front porch with or without a dog.") (citation, quotation marks, and emphasis omitted). Thus, the *Jardines* Court apparently agreed, albeit in dicta, that a nighttime visit would be outside the scope of the implied license (and thus a trespass).

We believe, as the Supreme Court suggested in *Jardines*, that the scope of the implied license to approach a house and knock is time-sensitive. *Id*. at ___; 133 S Ct at 1416 n 3; *id*. at ___; 133 S Ct at 1422 (Alito, J., dissenting). Just as there is no implied license to bring a drug-sniffing dog to someone's front porch, there is generally no implied license to knock at someone's door in the middle of the night. See *id*. at ___; 133 S Ct at 1416 (opinion of the Court) ("There is no customary invitation to do *that*."). This custom was apparent to the investigating officers in this case. KANET officers testified candidly that it would be inappropriate for Girl Scouts or other visitors to knock on the door in the middle of the night, but evidently the officers believed that they were not bound by these customs.[5] But a knock and talk is not considered a governmental intrusion precisely because its contours are defined by what *anyone* may do. *King*, 563 US at 469 ("When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do."). When the officers stray

_____

[5] In fact, multiple KANET members testified that they performed knock and talks in the middle of the night on a regular basis. Roetman testified that "[j]ust because it hits the stroke of midnight doesn't mean our case stops and we don't keep going to people's homes, whether it's a marijuana case or an armed robbery. . . . I don't know what you're getting at."

beyond what any private citizen might do, they have strayed beyond the bounds of a permissible knock and talk; in other words, the officers are trespassing. That is what happened here. The reasoning that leads us to conclude that these visits were outside the scope of the implied license is not nuanced or complicated. As the *Jardines* Court aptly explained, Girl Scouts and trick-or-treaters regularly manage to abide by the terms of the implied license. *See Jardines*, 569 US at ___; 133 S Ct at 1415 ("Complying with the terms of that traditional invitation does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters."). And, as any Girl Scout knows, the "background social norms that invite a visitor to the front door," *id*. at ___; 133 S Ct at 1416, typically do not extend to a visit in the middle of the night. See *United States v Lundin*, 817 F3d 1151, 1159 (CA 9, 2016) ("[U]nexpected visitors are customarily expected to knock on the front door of a home only during normal waking hours."). Thus, we hold that the police were trespassing when they approached the defendants' homes.[6]

The Court of Appeals majority reasoned that the implied license extended to midnight visitors seeking emergency assistance or delivering the newspaper and therefore it extended, too, to the police conduct here. We find these examples unhelpful. Newspaper delivery services have express permission to be on the property; therefore,

---

[6] We need not decide precisely what time the implied license to approach begins and ends. In these cases, there were no circumstances that would lead a reasonable member of the public to believe that the occupants of the respective homes welcomed visitors at 4:00 a.m. or 5:30 a.m. Accordingly, we believe it is clear that these approaches were outside the scope of the implied license.

their conduct is irrelevant when considering the implied license to approach a house.[7] And the fact that a visitor may approach a home in an emergency does not mean that a visitor who is *not* in an emergency may approach. Emergencies justify conduct that would otherwise be unacceptable; they are exceptions to the rule, not the rule.[8] Because we conclude that the implied scope of the license does not extend to these predawn approaches, we hold that the police were trespassing.

Having concluded that the police conduct was a trespass on Fourth-Amendment-protected property, we next turn to whether the police were seeking "to find something or to obtain information," such that the Fourth Amendment is implicated. *Jones*, 565 US at 408 n 5. A police officer walking through a neighborhood who takes a shortcut across the corner of a homeowner's lawn has trespassed. Yet that officer has not violated the Fourth Amendment because, without some information-gathering, no search has occurred. In these cases, however, the police were seeking information; therefore, their conduct implicated the Fourth Amendment. The KANET officers were not simply cutting across the defendants' lawns as a shortcut, stopping by to drop off a get-well-soon basket, or visiting the homes to regretfully inform the defendants that a loved one had

---

[7] Moreover, most newspaper delivery services have permission to leave newspapers on the property, not to approach the house and knock. Most homeowners would be surprised—and likely indignant—if their newspaper delivery person rang the bell and knocked for several minutes at 5:00 a.m. rather than simply leaving the paper.

[8] See *Ploof v Putnam*, 81 Vt 471; 71 A 188, 189 (1908) ("It is clear that an entry upon the land of another may be justified by necessity . . . ."); *Vincent v Lake Erie Transp Co*, 109 Minn 456, 460; 124 NW 221 (1910) (holding that trespass onto the property of another may be justified by necessity).

been injured in an accident. The officers approached each house to obtain information about the marijuana butter they suspected each defendant possessed. This intent is sufficient to satisfy the information-gathering prong of the *Jones* test.

That the officers intended to get permission to search for the marijuana butter does not alter our analysis. We agree with the prosecution that, as *King* established and *Jardines* affirmed, "it is not a Fourth Amendment search to approach the home in order to speak with the occupant, because all are invited to do that. The mere purpose of gathering information in the course of engaging in that permitted conduct does not cause it to violate the Fourth Amendment." *Jardines*, 569 US at ___; 133 S Ct at 1416 n 4 (citations, quotation marks, and emphasis omitted), citing *King*, 563 US at 469-470. True enough; approaching a home with the purpose of gathering information is not, standing alone, a Fourth Amendment search. *King*, 563 US at 469-470. But, as noted above, when "conjoined" with a trespass, information-gathering—which need not qualify as a search, standing alone—is all that is required to turn the trespass into a Fourth Amendment search. *Jones*, 565 US at 408 n 5. The officers here plainly approached the defendants' homes for the purpose of gathering information.[9]

The fact that the officers sought to gather their information by speaking with the homeowners rather than by peering through windows or rummaging through the bushes is irrelevant. What matters is that they sought to gather information by way of a trespass on Fourth-Amendment-protected property. That they did. The approaches of the

---

[9] Detective Todd Butler, one of the KANET members who participated in the knock and talk, testified that "[t]he only reason we were there is because of the drugs."

12

defendants' homes were not valid knock and talks, but rather searches under the Fourth Amendment. And because the police did not have warrants or any other exception to the warrant requirement, we conclude that the approaches violated the Fourth Amendment.

### B. CONSENT

This is not the end of the analysis, however. During the invalid knock and talks, each defendant consented to a search of his respective home. Consent searches, when voluntary, are an exception to the warrant requirement. *Schneckloth v Bustamonte*, 412 US 218, 219; 93 S Ct 2041; 36 L Ed 2d 854 (1973). The voluntariness question turns on whether a reasonable person would, under the totality of the circumstances, feel able to choose whether to consent. *Id*. at 227.

The defendants believe that their consent, even if voluntary, is irrelevant, given the contemporaneous Fourth Amendment violation. The prosecution views the Fourth Amendment violation as irrelevant, given the subsequent consent. Neither is correct. The defendants' consent is not irrelevant—but neither is it evaluated separately from the illegal searches.

Rather, the defendants' consent—even if voluntary—is invalid unless it is sufficiently attenuated from the warrantless search. The Supreme Court has repeatedly held that evidence obtained through an illegal search or seizure is tainted by that initial illegality unless sufficiently attenuated from it. See *Wong Sun v United States*, 371 US 471, 486; 83 S Ct 407; 9 L Ed 2d 441 (1963) (holding that evidence acquired after an illegal search must be suppressed unless the government shows that its acquisition of the evidence resulted from "an intervening independent act of free will" sufficient "to purge

13

the primary taint of the unlawful invasion"). That analysis has been applied to both consensual statements and—particularly relevant here—consensual searches. *Brown v Illinois*, 422 US 590, 602; 95 S Ct 2254; 45 L Ed 2d 416 (1975) (holding that when an inculpatory statement follows an unlawful arrest, a finding of voluntariness does not obviate the need to make a separate Fourth Amendment determination as to whether the statement was " 'sufficiently an act of free will to purge the primary taint' "), quoting *Wong Sun*, 371 US at 486; *Florida v Royer*, 460 US 491, 507-508; 103 S Ct 1319; 75 L Ed 2d 229 (1983) ("Because we affirm the . . . conclusion that Royer was being illegally detained when he consented to the search of his luggage, we agree that the consent was tainted by the illegality and was ineffective to justify the search.").

Thus, even when consent is voluntary, if it is not attenuated from the unconstitutional search, the evidence must be suppressed. *Wong Sun*, 371 US at 486; *Brown*, 422 US at 602; *Royer*, 460 US at 507-508. The Supreme Court has identified three factors to be considered in determining whether consent is sufficiently attenuated: (1) the temporal proximity of the illegal act and the alleged consent, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct. *Brown*, 422 US at 603-604.

In these cases, because the trial court determined that there was no Fourth Amendment violation, it did not consider whether the subsequent consent was attenuated from the illegality. Therefore, we remand to that court for consideration of that question in the first instance.

## III. CONCLUSION

A proper application of Fourth Amendment jurisprudence requires us to reverse the Court of Appeals. Because these knock and talks were outside the scope of the implied license, the officers trespassed on Fourth-Amendment-protected property. And because the officers trespassed while seeking information, they performed illegal searches. Finally, because of these illegal searches, the defendants' consent—even if voluntary—is nonetheless invalid unless it was sufficiently attenuated from the illegality. We therefore reverse the Court of Appeals and remand these cases to the Kent Circuit Court to determine whether the defendants' consent to search was attenuated from the officers' illegal search.

Bridget M. McCormack
Stephen J. Markman
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Joan L. Larsen
Kurtis T. Wilder

15